IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| **RUSSELL WALKER,** )<br>    **Plaintiff,**      )<br>                                )<br>**v.**                        )<br>                                )<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>    **Defendant.**      ) | **CIVIL ACTION NO. 1:12-00488** |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered February 23, 2012 (Document No. 6.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is the Plaintiff's Motion for Summary Judgment (Document No. 14.), Defendant's Motion for Judgment on the Pleadings (Document No. 18.),and Plaintiff's Reply. (Document No. 19.)

The Plaintiff, Russell Walker (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on May 22, 2006 (protective filing date), alleging disability as of March 1, 2006,[1] due to "bipolar condition, depression, rod from elbow to hand in right arm, right hip replacement, metal plate and screws in my right leg, metal plate in my right ankle."[2] (Tr. at 100-03, 104-10, 117-18, 122.) The claims were

---

[1] Claimant initially alleged disability as of February 15, 2006 (Tr. at 100, 104.), but amended the date to March 1, 2006. (Tr. at 109-10.)

[2] Claimant further alleged:

I have severe mood swings and have a hard time getting along with others. I do not sleep well and can go for days with no sleep at all. I am depressed because I can't go

denied initially and upon reconsideration. (Tr. at 55-57, 58-60, 62-64, 66-68.) On March 28, 2007, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 76.) A hearing was held on February 25, 2009, before the Honorable Amelia G. Lombardo. (Tr. at 23-50.) By decision dated March 30, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-21.) The ALJ's decision became the final decision of the Commissioner on November 10, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.)

Claimant sought judicial review of the Commissioner's decision in the United States District Court for the Southern District of Ohio, Western Division at Dayton, wherein the parties agreed to remand the case for the ALJ's further evaluation of Claimant's RFC. (Tr. at 457-58.) By Order entered October 14, 2010, by District Judge Walter Herbert Rice, the matter was remanded pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. at 456.) On November 1, 2010, the Appeals Council remanded the case to the ALJ for further consideration of the non-examining source opinions, to obtain additional evidence to complete the record, for further consideration of Claimant's RFC and a rationale containing specific reference to the record in support of the assessed limitations, and to obtain supplemental evidence from a vocational expert, if necessary. (Tr. at 459-62.)

A hearing was held on June 16, 2011, before the Honorable Amelia G. Lombardo. (Tr. at 436-55.) By decision dated October 28, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 421-34.) The ALJ's decision became the final decision of the Commissioner when the Appeals

---

        out and work and support my family like I use to do. I have trouble walking and standing for any length of time. It hurts to bend, or lift anything. My back aches a lot. I am in pain 95% of the time.

(Tr. at 122.) On his form Disability Report - Appeal, Claimant alleged the following as additional impairments: "Increased pain in the right arm/hand, back and legs, decreased mobility and function." (Tr. at 147.)

Council denied Claimant's request for review.[3] Claimant filed the present action seeking judicial review of the administrative decision on February 23, 2012, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other

---

[3] The transcript does not contain the Appeals Council's order denying Claimant's request for review of the ALJ's decision. Nevertheless, Claimant states in his brief that the "Appeals Council denied review in a decision dated, making the administrative law judge's decision the final decision of the agency." (Document No. 15 at 2.) In view of neither party making an issue of the absent document, the undersigned finds that both parties concede that the ALJ's decision was made final by a subsequent decision of the Appeals Council that is not a part of the record.

forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme.

> When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[4] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals

---

[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, March 1, 2006. (Tr. at 423, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "the residuals of a fall in 2002, degenerative disc disease, and bipolar disorder," which were severe impairments. (Tr. at 423, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 424, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work with the following limitations:

> [H]e cannot climb ladders, ropes, or scaffolds. He is restricted to occasional stooping and crouching. He is restricted to simple repetitive tasks. He requires the option to sit or stand at will. He can perform only occasional fine manipulation with his dominant right hand.

(Tr. at 425, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 432, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a clothing maker, survey worker, and information clerk, at the light level of exertion. (Tr. at 433, Finding No. 10.) On this basis, benefits were denied. (Tr. at 434, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the

6

claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on August 9, 1967, and was 43 years old at the time of the administrative hearing on June 16, 2011. (Tr. at 100, 104, 432) The ALJ found that Claimant had a 10th grade, or limited education and was able to communicate in English. (Tr. at 128, 432.) In the past, he worked as a roofer and a garage door repairman. (Tr. at 432.)

 <u>The Medical Record</u>

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider properly the opinions of Drs. Morton, Wilson, and Magnusen. (Document No. 15 at 13-20.)

7

Analysis.

Dr. Morton's Opinion.

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider properly the opinion of Dr. Morton, the non-examining reviewer, as ordered by the Appeals Council. (Document No. 15 at 13-14.) Claimant asserts that on remand, the Appeals Council directed the ALJ to consider Dr. Morton's limitations regarding his handling and fingering ability and his postural limitations. (Id. at 13.) Claimant contends however, that the ALJ failed to follow the Appeals Council's decision and failed to limit his ability to climb stairs and ramps on an occasional basis, occasional balancing, and no crouching, kneeling, or crawling. (Id. at 14.) Furthermore, Claimant asserts that the ALJ did not include the Appeals Council's RFC findings in the hypothetical to the VE or provide reasoning why she failed to include them. (Id.) As such, Claimant contends that the ALJ's decision is not supported by substantial evidence. (Id.)

In response, the Commissioner asserts that contrary to Claimant's argument, the Appeals Council did not direct the ALJ to adopt Dr. Morton's opinion and the ALJ gave weight to Dr. Morton's opinion to the extent that it was supported by the record. (Document No. 18 at 13-15.) The Commissioner notes that the ALJ adopted Dr. Morton's opinion on Claimant's handling and fingering ability when he limited him to occasional fine manipulation with his right hand. (Id. at 13-14.) Furthermore, the ALJ adopted Dr. Morton's opinion that he could never climb ladders, ropes, or scaffolds. (Id. at 14.) The ALJ however, did not adopt Dr. Morton's opinion that he was restricted to climbing ramps and stairs or balancing on an occasional basis and could never kneel, crouch, or crawl. (Id.) The Commissioner asserts that these restrictions did not significantly erode Claimant's occupational base for light work. (Id.) Citing SSR 85-15 and SSR 83-14, the Commissioner contends that Claimant could still have performed the jobs identified by the VE because these limitations did not have a significant impact "on the broad world of

work." (Id.)

The Commissioner also asserts that the record did not support Dr. Morton's latter limitations mentioned above. (Document No. 18 at 14-15.) Claimant notes that Dr. Morton issued his opinion in September 2006, and thereafter, Claimant's treating physician, Dr. Wilson, noted that Claimant's medication generally worked well in controlling his pain. (Id.) Additionally, the evidence submitted after remand suggested that Claimant was not as restricted as Dr. Morton believed. (Id. at 15.) For example, he did not use an assistive device for ambulation, had normal muscle strength on his left and near normal on his right, and had no atrophy. (Id.) The Commissioner contends that these normal findings contraindicated the limitations at issue. (Id.) Accordingly, the Commissioner asserts that the ALJ's decision regarding Dr. Morton's opinion is supported by substantial evidence. (Id.)

In Reply, Claimant asserts that he was not arguing that the Appeals Council ordered the ALJ to adopt Dr. Morton's opinion. (Document No. 19 at 3.) Rather, Claimant contends that the Appeals Council directed the ALJ to include all of Dr. Morton's RFC findings or give her rationale for rejecting them, which the ALJ failed to do. (Id.) To the extent that the Commissioner argues that the additional restrictions found by Dr. Morton did not erode significantly his occupational job base for light work, Claimant asserts that such an argument was not advanced in the ALJ's decision. (Id. at 3-4.) He asserts that the Commissioner cannot engage in "post hoc rationalization for the defendant's decision." (Id. at 4.) Claimant further asserts that although Dr. Wilson stated that medications kept Claimant's pain level down so that he could perform activities of daily living, she did not give any indication that his pain would remain in control with medication if he was working. (Id.) Finally, Claimant asserts that although he did not use any assistive device, the record established that he walked with a limp, needed to hold to objects to squat and kneel, was unable to walk a block at a reasonable pace on rough surface, and was unable to open a jar with his right hand due to weakness. (Id. at 4-5.) Claimant asserts that these objective

and clinical findings do not comport with the ALJ's RFC assessment. (Id. at 5.)

The evidence reveals that on September 21, 2006, Dr. Paul Morton, a non-examining state agency consultant, completed a form Physical RFC Assessment. (Tr. at 266-73.) Dr. Morton opined that due to Claimant's multiple areas of traumatic arthritis and status post multiple fractures, Claimant was limited to light exertional work. (Tr. at 267.) He opined that Claimant could occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds. (Id.) He could sit, stand, or walk for six hours out of an eight-hour workday and could push/pull without limitation. (Id.) Claimant could occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. (Tr. at 268.) Claimant also could occasionally balance and stoop. (Id.) Dr. Morton opined that he was limited to occasional in his ability to perform gross and fine manipulation with his right hand. (Tr. at 269.)

In the ALJ's decision dated March 30, 2009, she gave significant weight to the state agency reviewing physician's assessment of Claimant's physical RFC because Dr. Morton's assessment "is based on a review of the entire record up until the time of the opinion, and takes into consideration the [C]laimant's successful surgeries after his fall in 2002 and his subsequent work history which the other opinions do not." (Tr. at 18.) On remand, the Appeals Council acknowledged Dr. Morton's opinion and noted that the ALJ did not address his handling and fingering ability restrictions or his postural restrictions including no climbing of ladders, ropes, or scaffolds; kneeling; crouching; or crawling. (Tr. at 461.) The Appeals Council noted that because the limitations were not included in the ALJ's established RFC, the jobs identified by the VE "may not be suitable for an individual with the [C]laimant's medical-vocational profile." (Id.)

In the ALJ's opinion issued on October 28, 2011, she again gave significant weight to Dr. Morton's opinion, without much rationale. (Tr. at 430-31.) The ALJ noted that since the last decision, new evidence assigned Claimant additional physical restrictions due to the residual effects of fractures in his ankle and hip and to his degenerative disc disease. (Tr. at 431.) Specifically, the ALJ noted that

based on the new evidence, Claimant was restricted additionally from climbing ladders, ropes, or scaffolds and was restricted to no more than occasional stooping and crouching. (Id.) The ALJ discounted these restrictions however, because the x-rays upon which they were based showed no new significant findings and the x-rays of his right wrist actually showed improvement. (Id.) Nevertheless, the ALJ assessed these limitations in her established RFC. (Tr. at 426.) The ALJ also gave the opinion of Dr. David Magnusen, M.D., who conducted an orthopedic consultative examination of Claimant in September 2011, significant weight. (Tr. at 431, 617-34.) Dr. Magnusen opined, *inter alia*, that Claimant could never climb ladders, ropes, or scaffolds; occasionally stoop and kneel; occasionally climb stairs and ramps; never crouch or crawl; occasionally handle and push/pull with his right hand; continuously finger and feel; and frequently balance. (Tr. at 431, 617-34.) Although the ALJ gave Dr. Magnusen's opinion significant weight, she only adopted his restrictions that Claimant never climb ladders, ropes, or scaffolds, and occasionally stoop. (Tr. at 431.) Without explanation, the ALJ stated that there was "no need for additional postural or environmental restrictions such as Dr. Magnusen included in his assessment." (Id.) The ALJ found that Claimant's condition had not worsened and therefore, that the inclusion of the climbing, stooping, and crouching restrictions adequately accommodated any exacerbation of his injuries and his perception of pain attributable to his bipolar disorder. (Id.)

In view of the foregoing, the undersigned finds that the ALJ has failed to provide the rationale for adopting and rejecting some of the assessed limitations by Drs. Morton and Magnusen, the opinions of which the ALJ gave significant weight. The Commissioner essentially asks the Court to conduct a harmless error analysis by finding that the ability to perform gross manipulation skills with his right hand, climb ramps or stairs, and balance, crouch, kneel, or crawl all are activities which did not significantly erode Claimant's occupational base for light work. Without engaging in such an analysis, the undersigned finds that the parties agreed to an earlier remand for "reevaluation of [Claimant's] residual functional capacity finding," which included "reevaluating the medical source opinion evidence in the record." (Tr. at 457.) The undersigned finds that the ALJ failed to engage in a thorough analysis

11

and assessment of the opinion evidence of record pursuant to the Regulations. Specifically, she failed to provide a rationale as required by the Regulations, as to the weight she assigned the opinions. Though she gave significant weight to the opinions of Drs. Morton and Magnusen, she failed to adopt certain of their assessed limitations, without any explanation. Accordingly, the undersigned finds that the ALJ failed to engage in a proper reevaluation of the medical source opinion evidence and of Claimant's RFC, and recommends that the Court remand this matter for further consideration of the same. Because the undersigned finds that the ALJ erred in her analysis of the opinions of Drs. Morton and Magnusen, which were given significant weight, the undersigned finds no need to address the further opinion of Claimant's treating physician, Dr. Wilson, whose opinion was not given significant weight. All the opinion evidence should be reevaluated on remand.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Summary Judgment (Document No. 14.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 18.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time

period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: March 1, 2013.

R. Clarke VanDervort
United States Magistrate Judge